UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No: 8:22-cr-237-KKM-AEP

ADAM SAED,

   Defendant.
_____

## ORDER

Adam Saed moves to dismiss his indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). MTD (Doc. 91). He argues that preventing convicted felons, such as himself, from possessing firearms is not "consistent with the Nation's historical tradition of firearm regulation" and therefore runs afoul of the Second Amendment. *Id.* at 5 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022)). Saed raises an as applied challenge, which would inevitably fail in the light of his prior violent felony convictions. But regardless, the ruling he seeks is foreclosed by binding precedent. *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (per curiam). Therefore, I deny the motion to dismiss.

I.  DISCUSSION

The facts leading up to Saed's criminal prosecution are largely irrelevant to this motion, so I will not address them here. What is important is that Saed has been convicted of violent felonies and is now charged with possessing a firearm after being convicted of a qualifying felony. *See* 18 U.S.C. § 922(g)(1); *see also* Second Superseding Indictment (Doc. 72) at 1. He avers that § 922(g)(1) is unconstitutional under the Second Amendment as applied to him. MTD at 7.

The Second Amendment protects "the right of the people to keep and bear Arms" from infringement. U.S. Const. amend. II. "[O]n the basis of both text and history," the Supreme Court has held that this language "confer[s] an individual right to keep and bear arms." *D.C. v. Heller*, 554 U.S. 570, 595 (2008). But *Heller* also stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626. And that same language was repeated in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).

On the strength of *Heller*'s assurances, and shortly before those assurances were reaffirmed in *McDonald*, the Eleventh Circuit concluded that § 922(g)(1) did not violate the Second Amendment. *Rozier*, 598 F.3d at 770–71. There, as here, a felon challenged the constitutionality of § 922(g)(1). *Id.* at 769 & n.1. The defendant in *Rozier* tried to cast *Heller*'s discussion of bans on the possession of firearms by felons as nonbinding dicta. *Id.*

at 771 n.6. Although I am sympathetic to that distinction, the Eleventh Circuit disagreed. It offered two reasons for relying on *Heller*'s language to rebuff the defendant's claim: "First, to the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals, it is not dicta. Second, to the extent that this statement is superfluous to the central holding of *Heller*, we shall still give it considerable weight." *Id.* (emphasis in original) (citations omitted).

The scope of the right announced in *Heller* and *McDonald* was clarified in *Bruen*. 597 U.S. 1. There, the Supreme Court instructed courts to begin a Second Amendment analysis by asking whether the "plain text covers an individual's conduct." *Id.* at 17, 24. If so, "the Constitution presumptively protects that conduct." *Id.* "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. Only if the government can carry this burden may courts conclude that an individual's conduct "falls outside the Second Amendment's unqualified command." *Id.* (quotations omitted).

*Bruen* thus abrogated the multi-step interest balancing test for evaluating Second Amendment challenges that the Eleventh Circuit adopted in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261 (11th Cir. 2012). Under *GeorgiaCarry*, courts asked whether the restricted activity fell within the scope of the Second Amendment, and, if it did, asked whether the restriction could satisfy some form of means-end scrutiny. *Id.* at

1260 n.34. *Bruen* explained that this two-step framework was "one step too many." 597 U.S. at 19. Because *Heller* solely concerned itself with the text and history of the Second Amendment, it "does not support applying means-end scrutiny." *Id.*

Saed advances his Second Amendment claim on this background. He asks me to disregard the Eleventh Circuit's decision in *Rozier*, arguing that it has been abrogated by *Bruen*. MTD at 9–10. Instead, he would have me engage in a de novo analysis of the text and history of the Second Amendment to determine whether § 922(g)(1) passes constitutional muster. *Id.* at 4–7. Saed's substantive argument proceeds in two parts. First, he briefly argues that despite his criminal status, he is part of the "people" whose rights are protected by the Second Amendment. *Id.* at 3–4. Next, he claims that § 922(g)(1) is not "consistent with this Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 17, as applied to him, *see* MTD at 4–7. Therefore, he concludes, his indictment is unconstitutional and should be dismissed.

But despite Saed's contention that the jurisprudential slate has been swept clean, I am not free to cast *Rozier* aside. Had that decision relied on means-end scrutiny, Saed would be right; I am not bound by the results of a now-discredited legal test. *See United States v. DiFalco*, 837 F.3d 1207, 1216 (11th Cir. 2016) (courts "are not bound by the decisions of [prior Eleventh Circuit] panels where those decisions have been overruled or undermined to the point of abrogation by the Supreme Court"). But *Rozier* was not a

4

means-end scrutiny case. Instead, its holding was based on language in *Heller* and *McDonald* endorsing the continued validity of felon-in-possession laws. As I read it, the majority opinion in *Bruen* does not abrogate this reasoning. In fact, it does not revisit the topic of felon-in-possession laws at all—unlike its elaboration on the "sensitive places" doctrine. *Bruen*, 597 U.S. at 30–31. The first explicit reference to felon-in-possession bans in *Bruen* appears in Justice Kavanaugh's concurrence, joined by the Chief Justice, which yet again endorses the continuing validity of such laws. *Bruen*, 597 U.S. at 80–81 (Kavanaugh, J., concurring); *see also id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago* about restrictions that may be imposed on the possession or carrying of guns."). And the Eleventh Circuit has yet to overrule *Rozier*. Consequently, *Rozier* controls and forecloses Saed's argument. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding . . . unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting en banc. While an intervening decision of the Supreme Court can overrule the decision of a prior panel[,] . . . the Supreme Court decision must be clearly on point." (quotations, citations, and emphases omitted)).

Although *Rozier* remains the law of this Circuit until revisited en banc, there are substantial arguments that *Bruen*'s method applied afresh to § 922(g)(1) might create a distinction between felons convicted of violent versus certain nonviolent crimes. *See, e.g.*,

5

*Range v. Att'y Gen.*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (declaring § 922(g)(1) unconstitutional as applied to a particular nonviolent felon under *Bruen*); *Kanter v. Barr*, 919 F.3d 437, 451–69 (7th Cir. 2019) (Barrett, J., dissenting) (arguing, before *Bruen*, that § 922(g)(1) is unconstitutional as applied to certain nonviolent felons). Of course, that distinction would not help Saed, whose prior felony convictions include aggravated assault with a deadly weapon, aggravated battery with a firearm, and robbery. *See* Second Superseding Indictment at 1. Under any conceivable understanding of the Second Amendment, such an as applied challenge would fail. Regardless, those questions are for another day and another court.

## II.  CONCLUSION

Accordingly, Saed's Motion to Dismiss, (Doc. 91), is **DENIED**.

**ORDERED** in Tampa, Florida, on December 14, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge